# United States Court of Appeals
## For the First Circuit

No. 09-1460

JORGE GARCÍA MONAGAS, DIEGO GARCÍA MONAGAS
AND GISELDA GARCÍA MONAGAS,

Plaintiffs, Appellants,

v.

ILEANA GARCÍA-RAMIREZ DE ARELLANO; FREDESWINDA GARCÍA-RAMIREZ
DE ARELLANO; BD. OF DIR. OF W. HOLDING COMPANY, INC.; FRANK C.
STIPES-GARCÍA; BD. OF DIR. A TO K; BD. OF DIR. OF WESTERN BANK
OF PR; BD. OF DIR. OF WESTERN BANK INS. CORP.; JOHN DOE;
BD. OF DIR. A THROUGH F OF CENTRAL EUREKA, CKI INS. CO.;
ESTATE OF MIGUEL A. GARCÍA-MENDEZ; ESTATE OF FREDESWINDA
GARCÍA-RAMIREZ DE ARELLANO; ESTATE OF ANTONIA CABASSA-TEXIDOR;
ESTATE OF OSCAR ARTURO GARCÍA-PALACIOS; ESTATE OF OSCAR GARCÍA
CABASSA; ESTATE OF MYRIAM GARCÍA-BARBER; ESTATE OF OSCAR
GARCÍA-BUSH; ESTATE OF ZULMA ANSELMA GARCÍA-CABASSA; ESTATE OF
ZULMA VILELLA-GARCÍA; ESTATE OF JUAN E. VILELLA; ESTATE OF
FIORI VILELLA-GARCÍA; ESTATE OF CONSUELO GARCÍA-CABASSA;
ESTATE OF ZOE BLASINI-GARCÍA; ESTATE OF OSCAR BLASINI-GARCÍA;
ESTATE OF TEODORO PASCUAL FAJARDO-CABASSA; ESTATE OF
MANUEL MOREDA; ESTATE OF RITA VILELLA-BOTHWELL; ESTATE OF
REINA COLON-ALFONSO; FEDERAL INS. CO.; INSURANCE
COMPANIES A TO Z; INSURANCE COMPANIES AA, BB, CC, DD, EE, FF;
ANNETTE BLASINI-BATISTA, A/K/A ANNETTE RITA BLASINI-BATISTA;
ELBIA GARCÍA-CAMARA; OSCAR GARCÍA-CAMARA; CARLOS T.
GARCIA-CAMARA; ANTONIA BLASINI-BATISTA; SYLVIA CONSUELO
BLASINI-BATISTA; ZOE BLASINI-GARCIA; BLANCA TOLEDO;
ALEJANDRO SANTOPALO-VILELLA; FABIOLA SANTOPALO-VILELLA;
W. HOLDING COMPANY, INC., D/B/A WESTERN BANK OF PR;
WESTERN BANK INS. CORP.; ESTATE OF FLAVIA VILELLA-GARCÍA;
DELOITTE & TOUCHE, LLP.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lipez, Howard and Thompson,
<u>Circuit Judges</u>.

————————————————

          <u>Ralph Vallone, Jr.</u>, with whom <u>Ralph Vallone, Jr. Law Offices</u>
was on brief, for appellants.
          <u>Armando J. Martínez Vilella</u>, with whom <u>Martínez Vilella Law</u>
<u>Offices</u> and <u>Ramon Torres Rodriguez</u> were on brief, for appellees
Flavia Vilella García, Fiori Vilella García, Zulma Vilella García,
Silvia Consuelo Blasini Batista, Annette Mary Blasini Batista and
Antonia Rita Blasini Batista.
          <u>Ruben T. Nigaglioni</u>, with whom <u>Veronica Ferraiuoli Hornedo</u>,
<u>Rafael J. Martínez</u> and <u>Nigaglioni & Ferraiuoli Law Offices</u> were on
brief, for appellees Ileana García-Ramirez de Arellano, Fredeswinda
García-Ramirez de Arellano, Frank Stipes-García and W. Holding
Company, Inc.
          <u>Antonio Moreda Toledo</u>, <u>Irma R. Valldejuli</u> and <u>Moreda (M)</u>
<u>Moreda, P.S.C.</u>, on brief for appellees Manuel A. Moreda, Blanca
Toledo de Moreda and their Conjugal Partnership.

————————————————

March 16, 2012

————————————————

**Howard, <u>Circuit Judge</u>**.  This appeal is the latest chapter in a long-running intra-family dispute over property in Puerto Rico.  Attempting to secure this property, siblings Jorge, Diego and Giselda García-Monagas have previously filed multiple lawsuits in the Puerto Rico Commonwealth courts.  In each of these actions, the siblings, appellants here, advanced the same basic claim: under Puerto Rico inheritance law they were the rightful owners of the property.  Each action was resolved against them.

Undeterred, the appellants filed this action in federal district court in Puerto Rico.  They again claimed an ownership interest in the contested property and further alleged that the appellees violated a panoply of federal laws by defrauding them of their rightful inheritances.  The appellees moved to dismiss the complaint on various grounds, the chief one being that res judicata precluded relitigation of the claims.  The district court dismissed the complaint on this basis.  After careful review, we affirm.

## I.  Facts

Because we are reviewing the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), we state the facts as they are alleged in the amended complaint and draw all reasonable inferences therefrom in favor of the appellants. <u>González Figueroa</u> v. <u>J.C. Penney P.R., Inc.</u>, 568 F.3d 313, 316 (1st Cir. 2009).  We supplement the appellants' allegations with

documentation pertaining to the prior state court judgments against them. Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008).

The seeds of this dispute were sown in 1904 upon the death of García St. Laurent, the appellants' grandfather. He left behind his widow, Cabassa Texidor, and four children, one of whom was the appellants' father, Jorge Placido García Cabassa. At the time of his death, St. Laurent had amassed a great deal of real property, including the Santa Ana Farm and the Santa Ana Sugar Mill. This property belonged to St. Laurent alone, as Cabassa Texidor brought no property to the marriage and the marriage generated no communal property.

Following St. Laurent's death, Cabassa Texidor became involved with a man named Mateo Fajardo Cardona. They eventually married and had a son. Around this time, the appellants allege, Cabassa Texidor and Fajardo Cardona began scheming to deprive the four children from Cabassa Texidor's first marriage of their rightful inheritance. In 1908, through a judicial sale and repurchase, Cabassa Texidor acquired the Santa Ana Farm and Sugar Mill, which were the main assets of the St. Laurent estate. In the 1920s and 1930s, Cabassa Texidor also purchased property from the children of her first marriage that the children had inherited upon St. Laurent's death. This included a 1930 purchase of property belonging to the appellants' father, García Cabassa. Ultimately, some of the property acquired by Cabassa Texidor was used to form

"Central Eureka, Inc.," ("Eureka") a sugar producing company, and to help form "Westernbank," a savings and loan association.[1]

In 1968, the appellants filed an action in Puerto Rico Commonwealth court against Cabassa Texidor. In that action, the appellants contested Cabassa Texidor's acquisition of property formerly belonging to St. Laurent. They claimed that, although various properties were registered in Cabassa Texidor's name, the appellants were the rightful heirs to the contested property. The appellants' action targeted both real property and shares of Eureka. The court found that the appellants' father had sold his hereditary rights in St. Laurent's estate to Cabassa Texidor in a legally valid sale in 1930. The court then ruled that Cabassa Texidor had lawfully acquired all of the contested property through acquisitive prescription,[2] a rule of Puerto Rico property law that is the functional equivalent of adverse possession. See Rodriguez v. Escambron Dev. Corp., 740 F.2d 92, 93 (1st Cir. 1984). Specifically, the court found that Cabassa Texidor had remained in possession as owner of the contested property quietly, publicly, peacefully, and without interruption for over thirty years. The court thus granted summary judgment against the appellants. The

---

[1] Although the complaint is not entirely clear on this point, it appears to allege that Cabassa Texidor and her associates sold some of the acquired property and used the money from this sale to form Eureka and to help form Westernbank.

[2] P.R. Laws Ann. tit. 31, §§ 5276, 5280.

appellants appealed to the Puerto Rico Supreme Court, which denied review in 1974.

In 1990, the appellants filed an action in Puerto Rico Commonwealth court against a long list of defendants, including some of the appellees in this case. In that action, the appellants asserted, among other things, that Cabassa Texidor had improperly turned over property formerly belonging to St. Laurent to her second husband, Fajardo Cardona, who then co-mingled this property with his own to form Eureka. The case was dismissed on res judicata grounds, viz., that the judgment in the 1968 case foreclosed litigation of the claims. The Puerto Rico Circuit Court of Appeals affirmed the dismissal and the Puerto Rico Supreme Court denied review.

In 1998, the appellants filed several different actions in the Puerto Rico Commonwealth courts, and again included as defendants a number of the appellees in the present case. In each of the actions, which were later consolidated, the appellants alleged that the judgment in the 1968 case was the result of fraud. They claimed that during the pendency of the 1968 action, the defendants had failed to apprise the court of Cabassa Texidor's death. But these 1998 claims were also deemed to be precluded by the doctrine of res judicata, and again the intermediate appeals court affirmed and the Puerto Rico Supreme Court denied review.

In 2004, the appellants filed an action in Puerto Rico Commonwealth court against various defendants, once again including a number of the appellees. This time, the appellants claimed that they were entitled to portions of the contested property under a Puerto Rico statute referred to as the "Widow's Reserve." P.R. Laws Ann. tit. 31, § 2731. That statute, in sum, requires a widow entering a second marriage to set aside for the children and descendants of her first marriage any property acquired from the deceased spouse, apart from the widow's half of the conjugal profits. Id. The court dismissed this action as well on res judicata grounds and reprimanded the appellants for frivolously filing claims that had been previously dismissed on three separate occasions.

In 2007, while their appeal of the Commonwealth court's decision in the 2004 action was pending, the appellants filed this action in federal district court against certain descendants of Cabassa Texidor, former attorneys of the appellants' adversaries in the prior Commonwealth court actions, and officers and directors of Eureka and Westernbank.[3] The appellants again claimed that they

_____

[3] The appellants also initially named as a defendant the W. Holding Company, d/b/a Western Bank of Puerto Rico, but subsequently filed a notice of voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(i). Because the plaintiffs had voluntarily dismissed identical claims in a federal action filed against the company in 2006, the court dismissed the claims with prejudice pursuant to the so-called "two-dismissal" rule. See Fed. R. Civ. P. 41(a)(1)(B). The plaintiffs did not appeal this dismissal.

were entitled to portions of the contested property under the "Widow's Reserve." They also claimed that the appellees or their predecessors in interest had violated a number of federal laws in both acquiring and maintaining control over the contested property. The gist of their federal claims was that the appellees or their predecessors in interest concocted a scheme to defraud the appellants of their rightful inheritance, and that this scheme continued to the present day. Altogether, the appellants claimed that the appellees: (1) violated the Racketeering Influenced and Corrupt Organizations Act ("RICO Act") by (i) managing and operating Eureka and Westernbank to further a scheme to defraud, 18 U.S.C. § 1962(c), (ii) laundering money and property which "are in fact, and should be adjudged the property" of the appellants, id. § 1962(a), and (iii) denying the appellants' claims "in all ways possible," id. § 1962(a)-(c); (2) committed bank fraud by failing to communicate to a financial institution relevant information regarding the original ownership of Westernbank shares, id. § 1344;[4] and (3) committed securities fraud by failing to disclose the appellants' 2004 Commonwealth court action in Westernbank's federal filings, 15 U.S.C. § 78j, n(a).

---

[4] Presumably, the appellants are claiming that they were the original owners of Westernbank's shares in the sense that they were the rightful owners of the real property used to help form Westernbank.

The district court dismissed each claim, adopting a magistrate judge's report and recommendation that res judicata again barred this latest action.[5]  During the pendency of the present appeal, the Puerto Rico Court of Appeals affirmed the dismissal of the 2004 action on res judicata grounds, and the Puerto Rico Supreme Court denied review.

## II.  Discussion

"Res judicata is an affirmative defense, but where, as here, the defendant[s] ha[ve] raised the question on a motion to dismiss, the plaintiff[s] do[] not object to the procedure, and the court discerns no prejudice, the issue may be resolved on such a motion."  In re Sonus Networks, Inc., 499 F.3d 47, 56 (1st Cir. 2007) (citing Rodriguez v. Baldrich, 628 F.2d 691, 692 n.2 (1st Cir. 1980)).  The applicability of the doctrine of res judicata involves a question of law that we review de novo.  Id. (citing Pérez-Guzmán v. Gracia, 346 F.3d 229, 233 (1st Cir. 2003)).

Under the full faith and credit statute, 28 U.S.C. § 1738, a state court judgment is entitled to the same preclusive effect in federal court as it would be given in the state in which

---

[5] The appellees advanced as alternative grounds for dismissal a statute of limitations defense and the jurisdictional bar of the Rooker-Feldman doctrine.  See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923).  In light of our disposition of the appeal, we bypass these issues.  Torromeo v. Town of Fremont, 438 F.3d 113, 115 (1st Cir. 2006); Penobscot Nation v. Georgia-Pacific Corp., 254 F.3d 317, 324 (1st Cir. 2001).

it was rendered.  Id.; see also Boateng v. InterAmerican Univ.,
Inc., 210 F.3d 56, 61 (1st Cir. 2000) (noting that "Puerto Rico is,
for this purpose, the functional equivalent of a state") (citing
Cruz v. Melecio, 204 F.3d 14, 18 n.2 (1st Cir. 2000)).  We
therefore look to Puerto Rico law to determine the implications of
the Puerto Rico Commonwealth court judgments.

Puerto Rico's law of res judicata is codified at P.R.
Laws Ann. tit. 31, § 3343,[6] which has been interpreted as
encompassing both claim preclusion and issue preclusion (issue
preclusion is also sometimes referred to as collateral estoppel),
"albeit with slightly different requirements for each." R.G. Fin.
Corp. v. Vergara-Nuñez, 446 F.3d 178, 183 (1st Cir. 2006) (citing
Baez-Cruz v. Munic. of Comerio, 140 F.3d 24, 29 (1st Cir. 1998)).
Under this regime, claim preclusion "binds parties from litigating
or relitigating any claim that was or could have been litigated in
a prior adjudication and prevents claim splitting," Gener-Villar v.
Adcom Group, Inc., 417 F.3d 201, 205 (1st Cir. 2005) (per curiam)
(internal quotation marks and brackets omitted), while issue

---

[6] The relevant statutory language provides:

In order that the presumption of res adjudicata may be
valid in another suit, it is necessary that, between the
case decided by the sentence and that in which the same
is invoked, there be the most perfect identity between
the things, causes, and persons of the litigants, and
their capacity as such.

P.R. Laws Ann. tit. 31, § 3343.

-10-

preclusion "forecloses relitigation in a subsequent action of a fact essential for rendering a judgment in a prior action between the same parties, even when different causes of action are involved," id. at 205-06.

The appellants argue that neither the requirements specific to claim preclusion nor those necessary for issue preclusion have been satisfied. They also appear to argue that, even if res judicata would otherwise bar their claims, various exceptions to the doctrine apply in this case.

We reject these arguments. As a result of one or more of the previous actions, each of the appellants' claims is precluded by one or both of the doctrines of claim preclusion and issue preclusion. Moreover, none of the exceptions to the doctrine of res judicata apply.

### A. Claim under Puerto Rico law

In this action, the appellants argue that the Puerto Rico Widow's Reserve statute gives them an ownership interest in a significant portion of the contested property.[7] As previously explained, the Widow's Reserve requires a widow who enters a second marriage to set aside property acquired from the deceased spouse for the children and descendants of her first marriage. It provides:

---

[7] The appellants do not precisely identify what property they are entitled to, beyond saying that it is substantial and worth at least $15,000,000.

> Widower or widow contracting second marriage:
> The widower or widow contracting a second
> marriage shall be obliged to set apart for the
> children and descendants of the former the
> ownership of all the property he may have
> acquired from the deceased spouse by will, by
> intestate succession, by gift, or for any
> other good consideration, but not his or her
> half of the conjugal profits.

P.R. Laws Ann. tit. 31, § 2731.  According to the appellants, when Cabassa Texidor purchased the Santa Ana Farm and Sugar Mill in 1908, and later the property from her children in the 1920s and 1930s, that property became subject to the Widow's Reserve.  They further claim that their rights to this property vested when Cabassa Texidor died in 1973.

This particular claim is barred by claim preclusion.  A party asserting claim preclusion under Puerto Rico law must establish that:  (i) there exists a prior judgment on the merits that is "final and unappealable"; (ii) the prior and current actions share a perfect identity of both "thing" and "cause"; and (iii) the prior and current actions share a perfect identity of the parties and the capacities in which they acted.  See R.G. Fin. Corp., 446 F.3d at 183 (citing Boateng, 210 F.3d at 61-62).  A prior and current action will share a perfect identity of "thing" if they involve the same "object or matter," Lausell Marxuach v. Diaz de Yanez, 3 P.R. Offic. Trans. 742, 745 (1975), and will share a perfect identity of "cause" if "they flow from the same principal ground or origin," id. at 746, or, put another way, if they "derive

from a common nucleus of operative facts," Silva v. City of New Bedford, 660 F.3d 76, 79 (1st Cir. 2011) (internal quotation marks omitted).  Perfect identity of the parties exists if either (1) the parties in the current action were also parties in the prior action or (2) the parties in the current action are in "privity" with the parties in the prior action.  See P.R. Laws Ann. tit. 31, § 3343.

In their briefing, the appellants do not dispute that the judgments in the 1968, 1990, and 1998 Commonwealth court actions are "final and unappealable."  Nor, from all appearances, do they dispute that those actions and the current action share a perfect identity of "thing," namely, the assets that comprise Saint Laurent's estate that were found in Cabassa Texidor's name.  They do, however, argue that the prior actions and current action share neither a perfect identity of cause nor a perfect identity of parties.  These arguments are largely foreclosed by the decision in the 2004 Commonwealth action, which was made final and unappealable by the Puerto Rico Supreme Court's denial of certiorari during the pendency of this appeal.  Cruz v. Mendez, 204 F.3d 14, 20 (1st Cir. 2000) (holding that judgment becomes final for purposes of Puerto Rico preclusion law once no further appeal can be taken); see also Boateng, 210 F.3d at 63 (holding that final judgment rendered in parallel Commonwealth court action was preclusive in pending federal action).  In the 2004 action, the appellants advanced the very Widow's Reserve theory that they advance here against many of

-13-

the same defendants. The Commonwealth courts found that this latest theory was merely an attempt to recast previously unsuccessful arguments of entitlement to the contested property and was therefore barred by res judicata.

The Commonwealth courts' res judicata determination itself creates a preclusive effect. See Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 525 (1986) ("[T]he Full Faith and Credit Act requires that federal courts give the state-court judgment, and particularly the state court's resolution of the res judicata issue, the same preclusive effect it would have had in another court of the same State."); Hameed v. Aldana, 296 F. App'x 154, 155 (2d Cir. 2008). The appellants are thus barred from pursuing their Widow's Reserve claim against those defendants-appellees who were themselves named in the 2004 action, or who have succeeded to the estates of the individuals named in that action. See R.G. Fin. Corp., 446 F.3d at 187 ("[W]here one party acts for or stands in the place of another in relation to a particular subject matter, those parties are in privity for purposes of the Puerto Rico preclusion statute." (citations omitted)). This group includes the descendants of Cabassa Texidor and the former attorneys of the appellants' adversaries in the prior actions.[8]

_____

[8] Specifically, the 2004 action bars litigation of the Widow's Reserve claim against the following individuals or their estates: Ileana García-Ramirez de Arellano; Fredeswinda García-Ramirez de Arellano ; Frank Stipes-García; Miguel A. García-Mendez; Antonia Cabassa-Texidor; Oscar Arturo García-Palacios; Oscar García-

-14-

This brings us to the defendant-appellee officers and directors of Eureka and Westernbank. The 2004 action included these individuals as defendants only in their capacities as descendants of Cabassa Texidor, and thus the present claims against them in their corporate capacities are not necessarily barred by the claim preclusive effects of the final judgment in the 2004 case.[9] We therefore look to the earlier 1968, 1990 and 1998 actions to determine whether the Widow's Reserve claim against

Cabassa; Estate of Myriam García-Barber; Oscar García Bush; Zulma Anselma García-Cabassa; Fiori Vilella-García; Consuelo García-Cabassa; Zoe Blasini-García; Oscar Blasini-García; Teodoro Pascual Fajardo-Cabassa; Manuel Moreda; Rita Vilella-Bothwell; Reina Colon-Alfonso; Annette Blasini-Batista, a/k/a Annette Rita Blasini-Batista; Elba García-Camara; Oscar García-Camara; Carlos T. García-Camara; Antonia Rita Blasini-Batista; Sylvia Consuelo Blasini-Batista; Blanca Toledo; Alejandro Santopalo-Vilella; Fabiola Santopalo-Vilella; Flavia Vilella-García; Zulma Vilella-García; and Juan E. Vilella.

[9] In addition to being named in the present action in their personal capacities as descendants of Cabassa Texidor, Frank Stipes-García, Ileana García-Ramirez de Arellano, Fredeswinda García-Ramirez de Arellano, and Fiori Vilella-García were named in their capacities as members of the boards of directors of Eureka and/or Westernbank. Although the appellants do not specify whether they sued these board members in their corporate or personal capacities, the allegations in the complaint reveal that the allegedly wrongful acts relate to managerial and operational conduct undertaken to the benefit of the corporations. See McCarthy v. Azure, 22 F.3d 351, 360 (1st Cir. 1994) (indicating that whether a claim is asserted against a party in his corporate or personal capacity "is ultimately a function of the facts, not of pleading techniques alone"). Therefore, the claims arguably lie against the defendants-appellees in their corporate capacities. Cf. United States v. Cincotta, 689 F.2d 238, 241-42 (1st Cir. 1982) (holding that corporation may be held criminally liable for acts of agent that are "of the kind which he is authorized to perform, and . . . motivated -- at least in part -- by an intent to benefit the corporation.").

these remaining defendants is barred by res judicata. In doing so, we revisit the issues of identity of cause and identity of parties.

In assessing whether the prior actions and the current action share a perfect identity of cause, the Commonwealth courts' resolution of the issue in the 2004 action has at least precedential, if not preclusive, effect.[10] Cf. United States v. 177.51 Acres of Land, 716 F.2d 78, 80-81 (1st Cir. 1983) (invoking doctrine of stare decisis to rule against plaintiffs, notwithstanding that plaintiffs were not involved in previous action and thus collateral estoppel did not apply). Irrespective of the 2004 action's effect, however, the perfect identity of cause requirement plainly is satisfied. The inheritance claims presented in the prior actions and the Widow's Reserve claim presented in the current action stem from the same factual predicate: Cabassa Texidor's acquisition of the contested property. The appellants allege, as they did in the prior actions, that Cabassa Texidor could not have acquired lawful title to the contested property in contravention of their asserted ownership interests in the property under Puerto Rico law. Although the appellants now cite different

---

[10] Even though the corporate capacity defendants' absence from the 2004 Commonwealth action may prevent them from benefitting from that case's claim preclusive effects, the plaintiffs nevertheless may be barred by issue preclusion from relitigating the issue of perfect identity of cause even against these defendants. In light of the less-than-clear status of the viability vel non of non-mutual defensive estoppel under Puerto Rico law, see infra note 12, we will treat the Commonwealth courts' determination as persuasive, rather than preclusive. In any event, the perfect identity of cause requirement is satisfied.

-16-

legal authority to support their claim of ownership -- the Widow's Reserve -- the factual predicate of the claim remains the same.  As we have said in the past, "a mere difference in the legal theories on which two causes of action are grounded does not destroy the identity of thing or cause that otherwise exists between two suits arising out of a common nucleus of operative fact."  R.G. Fin. Corp., 446 F.3d at 184.

The perfect identity of parties requirement is also satisfied.  Although the corporate capacity defendants were not parties to the prior suits, the corporations that they represent -- Eureka and Westernbank -- were.  A suit against individuals in their corporate capacities effectively operates as a suit against the corporation itself.  McCarthy v. Azure, 22 F.3d 351, 359 (1st Cir. 1994) ("An official capacity suit is, in essence, another way of pleading an action against an entity of which an officer is an agent.  Consequently, such a suit is, in all respects other than name, to be treated as a suit against the entity." (internal quotation marks and citations omitted)).  Hence, the weight of authority is that an individual sued in his or her corporate capacity as an officer or director of a corporation is in privity with the corporation.  See, e.g., United States v. Gurley, 43 F.3d 1188, 1197 (8th Cir. 1994), cert. denied, 516 U.S. 817 (1995) (holding as a matter of federal preclusion law that officers and directors may be in privity with corporation if named in their

corporate capacity).  The appellants give us no reason to believe that the Commonwealth courts would not follow this rule.  Cf. R.G. Fin. Corp., 446 F.3d at 186 (holding under Puerto Rico law that joinder of additional defendants who were derivatively liable for acts of defendant in prior action did not destroy perfect identity of parties).  The corporate capacity defendants thus qualify as persons in privity with Eureka and Westernbank, and the res judicata defense is available to them.

## B.  Federal law claims

Having determined that the appellants' Widow's Reserve claim is barred by res judicata, we turn to their counterpart federal claims.  While the complaint is not a model of clarity, the appellants appear to allege that the appellees (or their predecessors in interest) committed various kinds of fraud both in acquiring the contested property (acts that occurred in 1908, the 1920s and the 1930s) and in maintaining control over it (acts that post-date the judgment in favor of Cabassa Texidor in the 1968 case -- which became final for purposes of res judicata in 1974 -- and that continue to the present day).  The appellants' securities fraud claim is subject to dismissal under Federal Rule of Civil Procedure 9(b).[11]  The remaining federal claims are precluded by

_____

[11] Under Rule 9(b), allegations of fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).  "To satisfy this particularity requirement, the pleader must set out the 'time, place, and content of the alleged misrepresentation with specificity.'"  SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (quoting Greebel v. FTP Software, Inc., 194 F.3d 185, 193 (1st Cir.

-18-

either the doctrine of claim preclusion or the doctrine of issue preclusion. We explain.

To the extent that these claims are based on fraud that the appellees or their predecessors in interest are alleged to have committed when acquiring the contested property, they are barred under claim preclusion. Because the appellants concede the elements of finality and perfect identity of thing, and perfect identity of the parties is established, the only remaining element in legitimate dispute here is whether the prior actions and the current action share a perfect identity of cause. They do.

Again, the various claims presented all derive from the same nucleus of operative facts -- Cabassa Texidor's acquisition of the contested property. That acquisition gave rise to the appellants' prior actions in 1968, 1990, and 1998, in which they claimed to be the rightful owners of the contested property under Puerto Rico inheritance law, as well as to their 2004 action, in which they claimed to be the rightful owners of the contested property under the Widow's Reserve statute. That acquisition has also given rise to the claims presented in this action, inasmuch as they allege that the appellees or their predecessors in interest committed fraud when acquiring this property. Accordingly, the appellants could have previously advanced their allegations of fraud and are barred from doing so for the first time here.

_____

1999)). The securities fraud claim in the appellants' complaint is far too general in nature to satisfy Rule 9(b).

To the extent that the appellants' claims are based on fraud that the appellees committed in order to maintain control over the contested property following the 1974 judgment in Cabassa Texidor's favor, they are barred by issue preclusion.  A party asserting issue preclusion under Puerto Rico law must establish that:  (i) the prior and current actions share the same issue of fact; (ii) the issue was "actually litigated" in the prior action; (iii) the issue was necessary to support a valid and final judgment in the prior action; and (iv) the prior and current actions share a perfect identity of parties.[12]  See Felix Davis v. Vieques Air Link, 892 F.2d 1122, 1124-25 (1st Cir. 1990).  Under Puerto Rico law, the doctrine of issue preclusion, unlike the doctrine of claim preclusion, does not require that the prior and current actions share a perfect identity of cause.  Baez-Cruz, 140 F.3d at 30.

---

[12]  Citing the Puerto Rico Supreme Court's decision in A & P Gen. Contractors, Inc. v. Asociacion Caná, Inc., 10 P.R. Offic. Trans. 984 (1981), the magistrate judge concluded that Puerto Rico law does not require that the actions share a perfect identity of parties if issue preclusion is being asserted defensively.  A & P Gen. Contractors, Inc., however, merely notes that the non-mutual defensive use of issue preclusion had been "generally accepted."  Id.  The court ultimately emphasized that, under Puerto Rico law, issue preclusion may only apply in a second action "between the same parties."  Id. (emphasis in original); accord Puerto Ricans for P.R. Party v. Dalmau, 544 F.3d 58, 69 (1st Cir. 2008).  While we have previously noted "our skepticism that Puerto Rico law would allow a plaintiff who lost against one defendant to then bring a new claim against another defendant . . . based on the same transaction where the outcome in the first case effectively negates the claim in the second," Cruz-Berríos v. González-Rosario, 630 F.3d 7, 15 (1st Cir. 2010), we need not address the scope of the doctrine here because we find perfect identity of the parties in any event.

The fourth element is already established and the remaining three are easily satisfied. The ultimate success of each of the federal claims hinges on the appellants having an ownership interest in the contested property. This ownership issue, however, was actually litigated and necessarily decided in the 1968 action. The judgment rendered in that case unequivocally established that Cabassa Texidor had lawfully acquired this property by satisfying the various elements of acquisitive prescription. By bringing these federal claims, the appellants have attempted to place the ownership issue in dispute once more. The previous Commonwealth court decisions preclude this.

### C. Exceptions

Puerto Rico law recognizes several exceptions to the doctrine of res judicata. Barreto-Rosa v. Varona-Mendez, 470 F.3d 42, 48 (1st Cir. 2006). For example, res judicata may not apply in the event of "fraud" or if "public policy demands an exception to res judicata." Id. We take the appellants to be arguing that these two exceptions apply here.

### 1. Fraud exception

The appellants allege, in effect, two distinct kinds of fraud. First, they claim that the appellees frustrated their ability to ascertain their purported right to the contested property under the Widow's Reserve. They state:

> Undersigned only recently . . . discovered
> their right to Reserve . . . a right of law as

to which judicial notice should have been taken by the Courts. Until that time, by intimidation, rumor, and other aggressive means, the Actors under the R.I.C.O. Enterprise . . . some of whom were Attorneys (officers of the court) had lulled and legally bludgeoned Plaintiffs into reliance on their statements to the extent that these plaintiffs felt they might not have any action at all.

In the past, we have said that claim preclusion may not apply if a plaintiff could not have known the full dimensions of their claim when the prior action was brought. In re Belmont Realty Corp., 11 F.3d 1092, 1100 (1st Cir. 1993). But that exception is inapplicable here. At the time that the appellants brought their prior actions, they should have known the full dimensions of any claim under the Widow's Reserve, which, according to the appellants themselves, were plainly spelled out by a statute.[13] It is unclear to us how the appellees could have used "intimidation, rumor, or aggressive means" to hide that statutory right from the appellants.

Next, the appellants argue that the appellees, in securing favorable judgments in the 1968, 1990, and 1998 actions, committed fraud on the Commonwealth courts. The thrust of their allegations is that the appellees duped the Commonwealth courts into holding that Cabassa Texidor had lawfully acquired the contested property through acquisitive prescription.

---

[13] The appellants do not claim that the appellees concealed the factual predicate necessary for the appellants to advance a claim under the Widow's Reserve. Nor could such a claim be maintained on this record.

But the relevant allegations fail to satisfy the strictures of Federal Rule of Civil Procedure 9(b). As already noted, that rule requires allegations of fraud to be pled with particularity. Such details are noticeably absent in the appellants' complaint. The following allegation, perhaps the most detailed of the relevant allegations, is illustrative. The appellants allege:

> By information and belief, the preparation and presentation of false fraudulent documents, including deeds, which were used by defendants in the State Court cases to prove title to properties, were all part of the Scheme utilized to defraud the legitimate reserve entitled heirs of [St.] Laurent . . . .

The appellants do not identify when and in which courts the fraudulent representations were made. Nor do they describe the content of the fraudulent representations. The claim, therefore, necessarily fails.

## 2. Public policy exception

The appellants finally argue, rather summarily, that because application of res judicata would defeat the ends of justice, the public policy exception should apply here. We fail to see the injustice. The appellants have had numerous opportunities in the Commonwealth courts to press their claims. Moreover, they have yet to convincingly argue that the judgment in the 1968 action holding Cabassa Texidor to be the rightful owner of the contested property was erroneous. As one treatise observes, general

-23-

exceptions to the doctrine of res judicata like Puerto Rico's public policy exception "must be limited to special circumstances, lest they invite such frequent second actions as to weaken the repose and reliance values of res judicata in all cases." 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4415 (2d ed. 2002); see also id. § 4408 ("Among the traditional cases, litigation seeking to establish ownership of property provides the clearest example of results dictated by the need for repose. A plaintiff must advance in the first suit every claim of title arising out of events occurring before that suit."). Such special circumstances are lacking here.

### III. Conclusion

For the reasons provided above, the judgment is **affirmed**. Costs are awarded to the appellees.