# United States Court of Appeals
## For the First Circuit

No. 12-1694

MANUEL RUIZ-SÁNCHEZ ET AL.,

Plaintiffs, Appellants,

v.

THE GOODYEAR TIRE & RUBBER COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Selya, Circuit Judges.

Julio César Alejandro Serrano, with whom Eileen Landrón Guardiola, Eduardo Vera Ramírez, Luis A. Rodríguez Muñoz and Landrón & Vera, LLP were on brief, for appellants.
Jorge L. Capó-Matos, with whom Alberto J. Bayouth-Montes and O'Neill & Borges LLC were on brief, for appellee.

May 31, 2013

**SELYA, Circuit Judge.** When a tire company closed its plant in Puerto Rico, it offered its employees severance pay contingent upon the execution of general releases. The plaintiff acquiesced. Nearly a year later, he reversed direction and asserted claims for unjust dismissal under Puerto Rico law. The district court rejected these claims.

The plaintiff appeals the dismissal of a particular claim under a protective Puerto Rico statute, P.R. Laws Ann. tit. 29, §§ 185a-185m, known colloquially as Law 80. As framed, his appeal implicates a fairly debatable question of first impression about the meaning and purport of Law 80's anti-waiver provision. See id. § 185i.

If the answer to that question were dispositive of the case in its present posture, we might well certify it to the Supreme Court of Puerto Rico under P.R. Laws Ann. tit. 32, app. III, Rule 53.1(f). But there is a logically antecedent issue about whether Law 80 applies at all to the plaintiff's discharge. The district court bypassed this issue, but we think that, in the interests of comity and federalism, it should be decided first. After all, if Law 80 does not apply, then there will be no need for us to answer prematurely the vexing question of statutory interpretation raised by the parties.

For this reason, we vacate the relevant portion of the judgment and remand for further proceedings consistent with this opinion.

## I.   BACKGROUND

"Because this case was decided below on a motion to dismiss, we rehearse the facts as revealed by the complaint and the documents annexed thereto."  Katz v. Pershing, LLC, 672 F.3d 64, 69 (1st Cir. 2012).

For thirty-three years, plaintiff-appellant Manuel Ruiz-Sánchez toiled for Kelly Springfield Puerto Rico, Inc., a wholly owned subsidiary of defendant-appellee Goodyear Tire and Rubber Company.  During his tenure there, he attained the position of general manager.

On April 7, 2009, Goodyear's human resources manager, Emily Baranek, signaled the end of the plaintiff's long career when she informed Kelly Springfield's work force that the plant would cease operations at month's end.  To ease the blow, she announced that Goodyear was prepared to offer severance packages; provided, however, that each recipient sign a general release of "all known and unknown claims, promises, causes of action, or similar rights of any type that [the employee] presently may have . . . with respect to [Goodyear]."  Anyone who disagreed with the proposed amount of his or her severance payment was directed to contact Baranek.

The arrangement constructed a forty-five day window within which an employee could "review and consider" the offer and the release. Any employee who signed a release was given the right to revoke it within seven days thereafter.

The plaintiff's response was less than enthusiastic. In a letter dated April 23, he expressed dissatisfaction with the amount of his proposed severance payment ($28,512) and suggested instead a significantly higher figure ($105,742). In the same letter, he inquired about avoiding severance altogether through a transfer to a different position at Goodyear's office in Miami. This inquiry was apparently prompted by the fact that some employees were afforded the opportunity to transfer from Kelly Springfield's Puerto Rico plant to Miami. Baranek responded verbally; she rejected the more munificent severance payment suggested by the plaintiff, explained that Goodyear was not willing to increase the amount of its offer, and scotched any possibility of a transfer. She later confirmed these advices in writing.

On April 30 (the day that the plant closed), the plaintiff accepted the $28,512 severance package and signed the proffered release. At that point in time, twenty-two days remained in the forty-five day "consideration period." The seven-day "rescission period" passed without incident.

Almost one year later, the plaintiff sued Goodyear in a local court. His complaint asserted claims for unjust dismissal

under both Law 80 and a Puerto Rico statute prohibiting age discrimination. Noting diverse citizenship and the existence of a controversy in the requisite amount, Goodyear removed the action to the United States District Court for the District of Puerto Rico. See 28 U.S.C. §§ 1332(a), 1441.

In due course, Goodyear moved to dismiss the complaint both for lack of personal jurisdiction and for failure to state a claim. The district court rejected Goodyear's jurisdictional contention. Ruiz-Sánchez v. Goodyear Tire & Rubber Co., No. 10-1598, 2011 WL 4709875, at *4-5 (D.P.R. Sept. 30, 2011). It then ruled that the release foreclosed the age discrimination claim but that the Law 80 claim could go forward. Id. at *5-7 (citing P.R. Laws Ann. tit 29, § 185i).

Goodyear moved for reconsideration of the Law 80 ruling. The district court reconsidered the matter and concluded, on reflection, that the release barred the Law 80 claim as well. Ruiz-Sánchez v. Goodyear Tire & Rubber Co., 859 F. Supp. 2d 225, 229 (D.P.R. 2012). The court proceeded to dismiss the case with prejudice.

This timely appeal ensued. In it, the plaintiff challenges only the dismissal of his Law 80 claim.

## II. ANALYSIS

The district court's dismissal of the Law 80 claim followed a motion to reconsider an earlier order. We normally

-5-

review a district court's decision to grant or deny reconsideration for abuse of discretion. See, e.g., Bennett v. Saint-Gobain Corp., 507 F.3d 23, 34 (1st Cir. 2007). Here, however, the parties' arguments are directed to the underlying issue — the propriety vel non of dismissal — so the Rule 12(b)(6) standard of review applies. See Santiago v. Puerto Rico, 655 F.3d 61, 67 (1st Cir. 2011). This standard is familiar. We assay orders of dismissal for failure to state a claim "de novo, assuming the truth of all well-pleaded facts contained in the operative version of the complaint and indulging all reasonable inferences in the plaintiff's favor." Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012) (internal quotation marks omitted).

In this case, the district court proceeded immediately to the issue of whether the release, which was annexed to the plaintiff's complaint, bars the maintenance of his Law 80 claim. Release is an affirmative defense. See Fed. R. Civ. P. 8(c)(1). Dismissal "on the basis of an affirmative defense requires that (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006) (internal quotation marks omitted).

Because this is a diversity case, the substantive law of Puerto Rico controls. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78

-6-

(1938); <u>Borges ex rel. S.M.B.W.</u> v. <u>Serrano-Isern</u>, 605 F.3d 1, 6 (1st Cir. 2010).  It follows that the validity of the plaintiff's Law 80 claim must be evaluated under Puerto Rico law.

Puerto Rico law generally allows for release or settlement of a claim, referred to as a "compromise."  <u>See</u> P.R. Laws Ann. tit. 31, § 4821; <u>see</u> <u>also</u> <u>id.</u> § 4 ("Rights granted by the laws [of Puerto Rico] may be renounced, provided such renunciation be not contrary to law, to public interest or public order, or prejudicial to the interest of a third person.").  The type of compromise at issue here is an "extrajudicial compromise" — a compromise entered either "before the commencement of an action" or "without the court's intervention."  <u>Neca Mortg. Corp.</u> v. <u>A & W Developers S.E.</u>, 1995 P.R.-Eng. 905,586 (1995).  A validly consummated compromise has "the same authority as res []judicata" as to the claims released.[1]  P.R. Laws Ann. tit. 31, § 4827; <u>Citibank Global Mkts.</u> v. <u>Rodríguez Santana</u>, 573 F.3d 17, 22 (1st Cir. 2009).  The Supreme Court of Puerto Rico has enumerated three prerequisites for the release or settlement of a claim: (i) "an uncertain legal relationship," (ii) "an intent to eliminate [the] uncertainty," and (iii) "reciprocal concessions."  <u>Citibank</u> v.

---

[1] Although it may seem unconventional to use the res judicata label in this context due to the absence of an earlier judgment, Puerto Rico law nonetheless gives res judicata effect to extrajudicial compromises.  <u>See</u> P.R. Laws Ann. tit. 31, § 4827. This doctrinal nuance derives from article 1816 of the Spanish Civil Code.

Dependable Ins. Co., 21 P.R. Offic. Trans. 496, 505-06 (1988). The release at issue here satisfies these prerequisites.

With respect to the first prerequisite, the termination of the plaintiff's employment necessarily created an uncertain legal relationship. After all, "[t]he ubiquity of litigation that surrounds the non-consensual termination of employment relationships bears powerful witness to the myriad uncertainties about legal rights and obligations incident to such terminations." Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 12 (1st Cir. 2007).

With respect to the second prerequisite, the language of the release manifests an obvious intent to eliminate those uncertainties. In pertinent part, the release memorializes the plaintiff's agreement "to release all known and unknown claims" arising out of his employment, and specifically lists Law 80 as one type of claim which the plaintiff intends to forego. In this regard, the release "acknowledge[s] that this Severance Payment is more than [Goodyear] is otherwise obliged to provide."

With respect to the third prerequisite, the parties made reciprocal concessions. The plaintiff agreed not to pursue any claims that he may have had arising out of the aborted employment relationship; Goodyear agreed to give the plaintiff a severance payment to which he otherwise may not have been entitled.

At first blush, then, the fulfillment of these three requirements appears to warrant the conclusion that the release was a valid settlement of the plaintiff's Law 80 claim pursuant to Puerto Rico law.  See Citibank, 21 P.R. Offic. Trans. at 505-06.  But appearances sometimes can be deceiving, and the plaintiff resists this conclusion.

As an initial matter, the plaintiff suggests that his execution of the release and his acceptance of the severance payment should not matter because those acts occurred under duress.  In this connection, his brief dwells on "the compressed time frame" and the imminence of the plant closure.  But there are no facts in the record (and, specifically, nothing plausibly alleged in the complaint) to support a remonstrance that the plaintiff did not have adequate time to consider the severance package.  Indeed, the known facts point in the opposite direction: the plaintiff had forty-five days to decide whether to sign the release — and he opted to act after only twenty-three days had elapsed.  In the same vein, he had available a seven-day rescission period, but he let it expire.  For aught that appears, the plaintiff had ample time to consider the release fully and to make an informed judgment about whether to sign it.  Any claim of duress is woven entirely out of flimsy strands of speculation and surmise and, thus, cannot survive scrutiny.  See Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

If more were needed — and we doubt that it is — the legal underpinnings of the "duress" argument are afforded only perfunctory treatment in the plaintiff's brief. We have said before, and today reaffirm, that "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

This brings us to the much harder question that undergirds the appeal. Law 80 contains an anti-waiver provision stating that:

> The right of an employee who is discharged from his employment without just cause, to receive the compensation provided in § 185a of this title, is hereby declared to be unwaiveable.
>
> Any contract or part thereof in which the employee waives the compensation to which he is entitled to, pursuant to §§ 185a-185m of this title, shall be null and void.

P.R. Laws Ann. tit. 29, § 185i. The Supreme Court of Puerto Rico has not authoritatively determined the relationship between this provision and extrajudicial compromises of the kind embodied in the release.

Nor are the contours of that relationship readily apparent. Generally speaking, Law 80 requires employers to compensate at-will employees who are discharged without just

-10-

cause.[2]  Id. § 185a.  Specifically, the law entitles such employees to a form of severance pay known as "mesada," which is calculated according to a formula based on the employee's salary and years of service.[3]  Id.; Otero-Burgos v. Inter Am. Univ., 558 F.3d 1, 7-9 (1st Cir. 2009).  Section 185b describes the reasons that constitute just cause for terminating an employee.  If an employee is discharged for one of these reasons, the employer will escape liability under Law 80.  P.R. Laws Ann. tit. 29, §§ 185a-185b.  To further protect at-will employees from "the inequality of bargaining power" inherent in the employer-employee relationship, section 185i provides that an employee may not waive the prophylaxis of Law 80.  See Otero-Burgos, 558 F.3d at 9 n.21.

The court below concluded that Law 80's anti-waiver provision applies to prospective waivers of Law 80 rights, not to waivers that come about when "an employee waives his Law 80 rights in an agreement posttermination . . . in order to avoid litigation."  Ruiz-Sánchez, 859 F. Supp. 2d at 228.  On this basis, the court held that the anti-waiver provision did not override the release executed by the plaintiff.  Id. at 228-29.  Because the

---

[2] For reasons that are not immediately apparent, the official English translation of Law 80 uses the terms "just cause" and "good cause" synonymously.  Compare, e.g., P.R. Laws Ann. tit. 29, § 185a, with, e.g., id. § 185b.

[3] Based on the plaintiff's salary and years of service, the amount of his Law 80 severance benefit, if owed, would significantly exceed the amount ($28,512) paid to him by Goodyear in consideration for the release.

release memorialized an otherwise valid extrajudicial compromise, it foreclosed any claim of entitlement to Law 80 relief.  Id.; see P.R. Laws Ann. tit. 31, §§ 4, 4821, 4827.

Confining the application of section 185i to prospective waivers of Law 80 claims, which has the effect of denying its application to extrajudicial compromises that settle previously accrued claims, may be a reasonable interpretation of the statute.[4] It is, however, not the only reasonable interpretation.  The choice between these two reasonable interpretations is fairly debatable, and the sources that we normally look to for edification — such as the language and purpose of the statute, see, e.g., Arevalo v. Ashcroft, 344 F.3d 1, 10 (1st Cir. 2003); legislative history, see, e.g., Passamaquoddy Tribe v. Maine, 75 F.3d 784, 788-89 (1st Cir. 1996); analogous statutes and case law, see, e.g., Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996); and policy considerations, see, e.g., id. — point in different directions.

On the one hand, it is evident that Law 80 was designed to provide economic protection from the ravages of arbitrary dismissals; and the text of section 185i contains no distinction between prospective waivers and waivers of previously accrued

_____

[4] By "previously accrued," we mean that at the time of the release, the employee has an actionable Law 80 claim relating to work performed in the past.  Such a claim might arise, say, when an employee already has been discharged or when the decision to discharge him already has been communicated to him.

-12-

claims. By like token, section 185i's reference to "[a]ny contract" might be thought to imply that it applies unreservedly to extrajudicial compromises.

So, too, it can be argued that a broad reading of section 185i is consistent with general trends in Puerto Rico labor law. After all, judicial supervision of contracts between employers and employees is not uncommon in Puerto Rico. See, e.g., P.R. Laws Ann. tit. 3, § 320. Other provisions within Law 80 also may be read to suggest a legislative preference for judicial or agency oversight of Law 80 claims. See id. tit. 29, §§ 185h, 185k, 185m.

On the other hand, none of these conclusions is compelled. Indeed, there are factors that support a narrower interpretation of section 185i. It can be argued that the absence of a distinction between prospective waivers and waivers of previously accrued claims in the text of the statute is telling. The same can be said for the absence of any mention of the anti-waiver provision's applicability to extrajudicial compromises. On at least one other occasion when the Puerto Rico legislature sought to limit the availability of extrajudicial compromises, it did so explicitly. See id. § 282 (imposing requirement that "[e]very extrajudicial settlement in regard to the payment of [certain types of] wages . . . shall be null" unless approved by the Department of Labor and Human Resources). The absence of any such language in section 185i may suggest the conclusion that the legislature, in

-13-

enacting Law 80, did not intend to interfere with the rights of employers and employees to settle previously accrued claims through extrajudicial compromises.

The short of it is that the push and pull of these competing centrifugal and centripetal forces muddy the waters as to how the Puerto Rico legislature intended section 185i to be construed vis-à-vis extrajudicial compromises of previously accrued Law 80 claims. This interpretive question is difficult, and we have no clear guidance on it from the Commonwealth's highest court. In addition, this question is a potentially important one, and prudence strongly suggests that a federal court — which is, after all, not the final arbiter of state law, see Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51-52 (1st Cir. 2008) — should not rush to answer it unnecessarily.

Given the interests of comity and federalism, we would be inclined to certify this question to the Supreme Court of Puerto Rico if answering it would be dispositive of this case. See Acadia Ins. Co. v. McNeil, 116 F.3d 599, 605 (1st Cir. 1997) ("[W]hen the meaning of a state law depends on the decisionmaker's ability to discern the state legislature's intent from an array of mixed signals, considerations of federalism, comity, and practicality suggest that the state's highest tribunal is best positioned to make an informed and authoritative judgment."). But we cannot say that answering it would be dispositive because the district court

-14-

bypassed the seminal question of whether Law 80 applies at all to the plaintiff's loss of employment. We believe that this logically antecedent question should be answered before any inquiry is attempted into the difficult interpretive question about the meaning and purport of section 185i.

To put into better perspective why we hold this belief, we pause to limn the parameters of the bypassed question. In its motion to dismiss, Goodyear offered an alternative basis for dismissal: it contended that Law 80 had no application in the circumstances of this case. It rested this contention on exceptions and exclusions contained in Law 80 itself,[5] and it has renewed this alternative contention on appeal.

We add that Goodyear's alternative contention, though not yet proven, appears to be colorable. It does, however, require further factual development — factual development that precludes

_____

[5] By way of elaboration, Law 80 provides that just cause for termination includes the "closing of the operations of the establishment." P.R. Laws Ann. tit. 29, § 185b(d). Goodyear argues that this provision inoculates it against the plaintiff's Law 80 claim. But the plaintiff counters that Goodyear transferred some less senior Kelly Springfield employees from the Puerto Rico plant to jobs in Miami. He notes that, in order for an employer to obtain the benefit of the plant-closing exclusion, the transfer of employees post-closing must be made according to seniority, as long as the transferred employees are in the same "occupational classification" and no "clear and conclusive difference in favor of the efficiency or capacity of the workers compared" exists. Id. § 185c. The parties dispute whether Goodyear's actions satisfied these fact-intensive conditions, and the plaintiff's complaint contains nothing that would permit a court to resolve this dispute on a Rule 12(b)(6) motion.

resolving the contention through a Rule 12(b)(6) motion to dismiss. See Morales-Cruz, 676 F.3d at 224.  Under these circumstances, we believe that the wisest and most practical course is to vacate the order dismissing the Law 80 claim and remand so that the parties may undertake the further factual development necessary to inform a decision as to whether Law 80 applies.  If the district court determines, on a developed factual record, that Law 80 does not apply, that will be the end of the matter (subject, of course, to the usual right of appeal).  If, however, the court determines that Law 80 does pertain, the question of whether the release can be given effect despite Law 80's anti-waiver provision would then come front and center.  Should the district court find itself faced squarely with that question, the court can certify it to the Supreme Court of Puerto Rico.  See P.R. Laws Ann. tit. 32, app. III, Rule 53.1(f); P.R. Sup. Ct. R. 25, P.R. Laws Ann. tit. 4A, § 25.

## III.  CONCLUSION

We need go no further.  For the reasons elucidated above, we vacate the order of dismissal as to the Law 80 claim[6] and remand for further proceedings consistent with this opinion.

**Vacated and remanded.  No costs.**

**— Concurring Opinion Follows —**

---

[6] The plaintiff has not appealed from the district court's dismissal of his age discrimination claim, and we leave the judgment intact as to that claim.

-16-

**TORRUELLA, <u>Circuit Judge</u> (Concurring).** I agree with the majority's result and its reasoning that we need not reach the question of law regarding waiver of appellant's Law 80 claim.

However, I concur to briefly note my disagreement with the majority's conclusion that Section 185i -- Law 80's anti-waiver provision -- is ambiguous. In my view, a plain reading of that provision indicates a categorical prohibition on the waiver, by contract, of an employee's Law 80 rights to compensation, prospective or accrued, including post-termination and in the extrajudicial settlement context. The statute refers generally to the rights of employees who are "discharg<u>ed</u>," in the past tense, as coming within the coverage of those who cannot waive receipt of compensation, indicating that contracts made by employees vested with accrued rights are invalid if they contain waivers of those rights. Further, the right that "is hereby declared to be unwaiveable" is not conditioned or modified, supporting a reading of categorical unwaiveability. Finally, the provision declares that "<u>any</u>" contract waiving the right to compensation due under Law 80 shall be null and void. The use of such a categorical term includes all contracts within its scope, rejecting any differentiation between pre- and post-termination contracts.

Since, as stated, we need not reach this issue at this stage, I leave the interpretation of Section 185i's scope to the Puerto Rico Supreme Court.