FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

### BAP NO. PR 21-012

### Bankruptcy Case No. 19-00387-MCF

### PRESERBA COMPAÑÍA DE DESARROLLOS, INC.,
Debtor.

### PRESERBA COMPAÑÍA DE DESARROLLOS, INC.,
Appellant,

v.

### CONDADO 2, LLC,
Appellee.

### BAP NO. PR 21-013

### Bankruptcy Case No. 19-00388-MCF

### INVERSIONES CARIBE DELTA, INC.,
Debtor.

### INVERSIONES CARIBE DELTA, INC.,
Appellant,

v.

### CONDADO 2, LLC,
Appellee.

Appeals from the United States Bankruptcy Court
for the District of Puerto Rico
(Hon. Mildred Cabán Flores, U.S. Bankruptcy Judge)

Before
Finkle, Cary, and Katz,
United States Bankruptcy Appellate Panel Judges.

Carmen D. Conde Torres, Esq., Luisa S. Valle Castro, Esq., and
William J. Alemañy-Méndez, Esq., on brief for Appellants.
Sonia E. Colón, Esq., Gustavo A. Chico-Barris, Esq., Camille N. Somoza, Esq., and
Frances C. Brunet-Uriarte, Esq., on brief for Appellee.

January 5, 2022

**Finkle, U.S. Bankruptcy Appellate Panel Judge.**

The chapter 11 debtors, Preserba Compañía de Desarrollos, Inc. ("Preserba") and Inversiones Caribe Delta, Inc. ("Caribe Delta") (collectively, the "Debtors"), appeal from the bankruptcy court's orders confirming their respective chapter 11 plans of reorganization, as modified by the court. Both plans incorporated the terms of court-approved stipulations between the respective Debtors and Condado 2, LLC ("Condado") fixing the amount and treatment of Condado's secured claim in each case.[1] The plans also contained footnotes, which are at the heart of these appeals, providing for the reduction in the stipulated amounts of Condado's claims to be paid under the plans by post-petition payments made by the Debtors. Condado objected to confirmation of the plans on the grounds that such reduction of the stipulated claim amounts conflicted with the express terms of the stipulations. The bankruptcy court agreed and confirmed the plans, but with the "elimination" of the disputed footnotes. On appeal, the Debtors challenge the bankruptcy court's modification to their plans.[2]

For the reasons set forth below, we **AFFIRM**.

---

[1] On December 29-30, 2021, all four attorneys of record for Condado filed motions seeking to withdraw their representation in these appeals, asserting that Condado's claims have been transferred to another (unidentified) entity and Condado no longer has an interest in these appeals. There is, however, no evidence of the alleged transfers in the appellate record or on the bankruptcy court dockets.

[2] The Debtors' cases were jointly administered, and the bankruptcy court held a combined confirmation hearing and entered substantively identical confirmation orders in each case. The stipulations which were incorporated in each plan were substantively similar as to the treatment of Condado's claims and the plans contained nearly identical footnotes. The differences between the stipulations in the respective cases, which are not material to our analysis, relate to the description of the loan transactions and the stipulated amounts of Condado's claims. Condado raised the same objections to confirmation of each plan and the parties presented the same arguments in each of these appeals. Consequently, the Panel joined the two appeals for oral argument and now for disposition.

## BACKGROUND

### I.        Pre-Bankruptcy Events

The Debtors are in the business of developing, selling, and leasing real estate.  Prior to the petition date, Preserba constructed a 56-unit low-income housing project in Comerio, Puerto Rico (the "Preserba Property").  The project was financed by approximately $6 million in loans from Firstbank Puerto Rico ("Firstbank"), secured by several mortgages on the Preserba Property and tax credits and rents derived from the property.

Caribe Delta, a company related to Preserba, operated two commercial real estate projects in Puerto Rico: one located at Urbanización Industrial Bucana in Ponce which had commercial tenants, and the other located in Dorado which involved a multi-building renovation of historic property (the "Caribe Delta Property").  Caribe Delta's projects were financed in part through approximately $3.8 million in loans from Firstbank, secured by mortgages on the Caribe Delta Property and rents derived from the property.  The Debtors' obligations to Firstbank were cross-collateralized and cross-guaranteed.

After the Debtors defaulted on their loan obligations, Firstbank sold their loans to Condado at a discount.  Condado then sued the Debtors in separate actions in the Puerto Rico Court of First Instance to collect on the indebtedness and to foreclose against their properties.  The litigation concluded with the entry of consent judgments (the "Local Court Judgments") in which the Debtors agreed to pay Condado $8.2 million in full satisfaction of their combined debts.  The Debtors collectively paid Condado more than $3.5 million under the Local Court Judgments, but ultimately defaulted and Condado sought to execute on the judgments, precipitating the Debtors' bankruptcy filings.

## II.       The Bankruptcy Filings

In January 2019, the Debtors filed voluntary chapter 11 petitions, thereby staying the foreclosure proceedings. On its bankruptcy schedules, Preserba listed Condado with a $2.7 million claim secured by the Preserba Property, which it valued at $3 million. Caribe Delta listed Condado with a $2,296,978.63 claim secured by the Caribe Delta Property, which it valued at $6 million.

Condado initially sought to prohibit the Debtors from using its cash collateral (consisting of rental income from their respective properties), but the parties reached an agreement, approved by the court, for the Debtors to make monthly aggregate payments of $20,500 to Condado ($10,518 to be paid by Caribe Delta and $9,982 to be paid by Preserba) in exchange for their use of the rental income. The Debtors made monthly post-petition payments to Condado under the cash collateral agreement for almost two years before their plans were confirmed.

## III.      Settlement of Condado's Claims

### A.       Condado's Proofs of Claim

Condado filed an initial proof of claim in Preserba's case asserting a secured claim of $4,661,284.92, including nearly $600,000 in pre-petition interest accrued at a rate of 12% per annum. Likewise, in Caribe Delta's case, Condado initially filed a proof of claim asserting a secured claim of $4,685,595.96, including more than $900,000 in pre-petition interest accrued at a rate of 8.75% per annum. The Debtors objected to Condado's claims, contending that the claims should be reduced by the pre-petition payments made under the Local Court Judgments and to accurately reflect the lower pre-petition interest rates agreed upon in those judgments (4.25% as to Preserba and 3.5% as to Caribe Delta).

Eventually, the parties resolved the interest rate disputes. Consistent with this partial resolution, Condado filed amended proofs of claim in both cases, reducing its claim against

5

Preserba to $4,548,482.83, including pre-petition interest at the agreed rate of 4.25%, and reducing its claim against Caribe Delta to $4,665,085.77, including pre-petition interest at the agreed rate of 3.5%.

## B.     Amended Joint Pretrial Report

With the dispute about the amounts of Condado's claims still unresolved, the parties filed an amended joint pretrial report summarizing their respective positions.  The Debtors included a Claims Reconciliation Report dated May 1, 2020, prepared by an accountant, that provided a "reconciliation" of the amounts claimed to be outstanding by the Debtors and Condado.  The report highlighted several discrepancies between the parties' asserted claim amounts and, in particular, the application of the Debtors' post-petition payments to Condado.  Of relevance here, the Debtors' calculations applied the post-petition payments to reduce the principal balances due on their loans, while Condado's calculations applied the post-petition payments to reduce accrued post-petition interest it had added to the pre-petition indebtedness.  Condado's accrual of post-petition interest was specifically flagged as an issue that "need[ed] to be addressed."

## C.     The Amount Stipulations

Prior to the scheduled evidentiary hearing on the Debtors' objections to Condado's proofs of claim, the parties settled their disputes.  Preserba and Condado filed a joint stipulation in Preserba's case (the "Preserba Amount Stipulation") in which they agreed that Condado held an allowed secured claim of $3.6 million, a reduction of more than $1 million from the original claim amount.  The Preserba Amount Stipulation provided, in pertinent part:

> The Parties have engaged in good faith negotiations to settle the contested matter between them, that is, the Debtor's *Objection to Claim*, and hereby submit the terms of their agreement for the Court's approval.
>      . . . .
>
> The Parties . . . acknowledge and agree that for purposes of this bankruptcy case, Condado agrees to amend the amount in Proof of Claim No. 2 to $3,600,000.00.

6

Condado shall amend Proof of Claim No. 2 within seven (7) days from the Court's approval of this Stipulation.

A similar stipulation was filed in Caribe Delta's case (the "Caribe Delta Amount Stipulation"), in which the parties agreed Condado held an allowed secured claim of $4 million and that it would also amend its proof of claim to reflect that amount. (Hereinafter, both stipulations are referred to collectively as the "Amount Stipulations," and the respective amounts of Condado's allowed secured claims set forth in those stipulations are referred to collectively as the "Stipulated Claim Amounts").

The Amount Stipulations also identified certain "events of default," including any amendment by Condado of its proofs of claim "in order to increase" the Stipulated Claim Amounts.

### D.     The Treatment Stipulations

A few weeks later, Preserba and Condado executed a second stipulation detailing the treatment of Condado's $3.6 million secured claim under Preserba's plan (the "Preserba Treatment Stipulation"). It provided in pertinent part:

> The Parties have engaged in good faith negotiations to settle the contested matter between them regarding the treatment of Condado's claim in the *Plan* or in any subsequent Chapter 11 Plan that is filed in this case, and hereby submit the terms of their agreement for the Court's approval, subject to the terms and conditions stated herein.
>
>       . . . .
>
> . . . The Debtor [Preserba] agrees to <u>fully</u> pay Condado's secured Claim in the amount of $3,600,000.00 through direct payments to Condado as follows: (a) monthly payments over a period of seven (7) years, that is, eighty-four (84) months, <u>beginning within ten (10) days of the approval of this Stipulation by the Court and continuing on the first (1st) day of each month thereafter</u>; (b) the applicable interest rate shall be of 150 points over the prime rate as of the date of the confirmation of the Plan, that is, prime rate plus 1.5%, publicly declared by J.P. Morgan Chase & Co., in the City of New York; (c) these monthly payments will be made using a thirty (30) year amortization schedule; and (d) a balloon payment of the balance of the Claim due at the end of the seven (7) year period.

. . . This Stipulation shall be adopted by Debtor's *Plan* and shall constitute the treatment for secured creditor Condado. Should there be any discrepancy between the terms and conditions of this Stipulation and the Chapter 11 Plan that is ultimately confirmed, the provisions of this Stipulation shall prevail over the content of such Chapter 11 Plan.

. . . No part of this Stipulation may be amended unilaterally or without the other party's full written consent. The Debtor shall not subsequently amend the terms of this Stipulation through a payment plan or post-confirmation modification without prior written consent by Condado. Any post-confirmation modification or treatment that the Debtor subsequently files in this case, shall keep the terms and conditions in favor of Condado, pursuant to this Stipulation, unless Condado agrees to any change in treatment.

(italics in original; underlined emphasis added).

Likewise, Caribe Delta and Condado executed a stipulation detailing the treatment of Condado's $4 million allowed secured claim under Caribe Delta's plan (the "Caribe Delta Treatment Stipulation") that included provisions nearly identical to those contained in the Preserba Treatment Stipulation, except for slight differences in the amortization schedule and the post-petition interest rate. It provided:

The Debtor [Caribe Delta] agrees to fully pay Condado's secured Claim in the amount of $4,000,000.00 through direct payments to Condado as follows: (a) monthly payments over a period of seven (7) years, that is, eighty-four (84) months, beginning within ten (10) days of the approval of this Stipulation by the Court and continuing on the first (1st) day of each month thereafter; (b) the applicable interest rate shall be of 200 points over the prime rate as of the date of the confirmation of the Plan, that is, prime rate plus 2.0%, publicly declared by J.P. Morgan Chase & Co., in the City of New York; (c) these monthly payments will be made using a twenty-five (25) year amortization schedule; and (d) a balloon payment of the balance of the Claim due at the end of the seven (7) year period.

(emphasis added). (Hereafter, the Debtors' respective Treatment Stipulations will be referred to collectively as the "Treatment Stipulations").

The Treatment Stipulations also provided that a unilateral amendment to Condado's proofs of claim to increase the Stipulated Claim Amounts would constitute an "event of default." They further provided that in the event of a default under the Treatment Stipulations, Condado's

8

claims and the Debtors' obligations to Condado under the confirmed plans would revert to their original, pre-bankruptcy status, and the outstanding indebtedness would become immediately due and payable.

By the express language of the Treatment Stipulations, the Debtors' payments to Condado of the Stipulated Claims Amounts would begin *after* court approval of the stipulations. Significantly, the Stipulations did not provide that post-petition payments would be applied to reduce the Stipulated Claim Amounts or that the Debtors would actually pay a reduced amount through their plans.

### E.    Orders Approving Stipulations and Amended Proofs of Claim

The bankruptcy court approved the Amount Stipulations and the Treatment Stipulations. (The four stipulations are referred to collectively as the "Stipulations").  Consistent with the Amount Stipulations, Condado filed amended proofs of claim for the stipulated amount of $3.6 million in Preserba's case and $4 million in Caribe Delta's case.  The amended claims were automatically deemed allowed since no objections were filed.  See 11 U.S.C. 502(a) (providing that a claim is deemed allowed unless a party in interest objects).

## IV.    Plan Confirmation

### A.    The Plans of Reorganization

After court approval of the Stipulations, on December 30, 2020, the Debtors filed amended plans of reorganization (collectively, the "Plans") "to incorporate the terms and conditions" of their respective Stipulations.  The Preserba plan acknowledged Condado's allowed secured claim in the amount of $3.6 million and provided for its treatment as follows:

> Pursuant to the *Stipulation to Settle Debtor's Objection to Condado's Proof of Claim* [the Preserba Amount Stipulation], the parties agreed to allow amended POC #2 in the amount of $3,600,000.00.  See Proof of Claim No. 2-4.

Condado's allowed secured claim will be paid pursuant to the terms of the *Stipulation for the Treatment of Condado's Claim* [the Preserba Treatment Stipulation] filed at Docket No. 161 on October 30, 2020, and approved by the Court at Docket 169. <u>The Stipulation is incorporated by reference as if fully transcribed herein. In short, Condado's allowed secured claim in the amount of $3,600,000.00[3] will be paid under the Amended Plan, through monthly installments of $17,685.82,</u> over a period of seven (7) years from the Effective Date, that is in eighty-four (84) consecutive monthly installments, bearing interest at the Prime Rate plus one point five percent (1.50%) as of the date of the confirmation of the Plan (estimated to be 4.75%), under an amortization schedule of thirty (30) years. Debtor will make a balloon payment of the balance of the Claim at the end of the seven (7) year period. See Docket Nos. 161 (Stipulation) and 169 (Order).

(italics in original; underlined emphasis added) (footnote in original).

Although not referenced in the Preserba Treatment Stipulation, footnote 3 of the plan provided that the stipulated amount of Condado's allowed secured claim had "been reduced by post-[]petition payments and [would] be recalculated as of [the plan's] Effective Date." An exhibit to the plan showed that Preserba had made $209,622 in post-petition payments, "reducing the obligation to $3,390,378 as of December 14, 2020," and that Preserba would pay only the "balance of the allowed Secured Claim" through its plan.

Caribe Delta's plan provided essentially the same treatment for Condado's allowed $4 million secured claim:

Pursuant to the *Stipulation to Settle Debtor's Objection to Condado's Proof of Claim* [the Caribe Amount Stipulation], filed at Docket No. 164 on October 6, 2020, as approved by the Court at Docket 171[,] the parties agreed to allow amended POC #7 in the amount of $4,000,000.00. <u>See</u> Proof of Claim No. 7-3.

Condado's allowed secured claim will be paid pursuant to the terms of the *Stipulation for the Treatment of Condado's Claim* [the Caribe Delta Treatment Stipulation] filed at Docket No. 170 on October 30, 2020, and approved by the Court at Docket 178. <u>The Stipulation is incorporated by reference as if fully transcribed herein. In short, Condado's allowed secured claim in the amount of $4,000,000.00[5] will be paid under the Amended Plan, through monthly installments of $22,538,</u> over a period of seven (7) years from the Effective Date, that is in eighty-four (84) consecutive monthly installments, bearing interest at the Prime Rate plus two percent (2.00%) as of the date of the confirmation of the Plan (estimated to be 5.25%), under an amortization schedule of twenty-five (25) years. Debtor will make a balloon payment of the balance of the Claim at the

end of the seven (7) year period.  See Docket Nos. 170 (Stipulation) and 178 (Order).

(italics in original; underlined emphasis added) (footnote in original).

As with Preserba's plan, Caribe Delta's plan similarly provided, in footnote 5, that the stipulated amount of Condado's allowed secured claim had "been reduced by post-petition payments and [would] be recalculated as of [the plan's] Effective Date."  Attached to the plan was an exhibit showing that Caribe Delta had made $238,878 in post-petition payments, "reducing the obligation to $3,761,122 as of December 14, 2020," and that Caribe Delta would pay only the "balance of the allowed Secured Claim" through its plan.

### B.    Condado's Objections to Confirmation

Condado objected to confirmation of the Plans on the grounds that each plan "contemplate[d] a loan balance that [wa]s lower than the amount stipulated . . . ."  Condado argued that the terms of the Treatment Stipulations were clear and provided for the payment of the Stipulated Claim Amounts "through prospective monthly payments," beginning after court approval of the Stipulations.  Condado asserted that the Stipulations "d[id] not contemplate the reduction of the settled claim amount[s]" or call for "retroactive" payments.  Leaving "no doubt as to the intentions of the contracting parties," Condado contended, the Treatment Stipulations were binding on the parties and should be enforced according to their unambiguous terms.  Further, Condado argued that the Treatment Stipulations constituted "contract[s] of compromise" under Puerto Rico law with res judicata effect, and the Debtors were "estopped from re-litigating" the amounts to be paid to Condado through the Plans.  Accordingly, Condado requested that the bankruptcy court deny confirmation of the Plans or, in the alternative, eliminate the contested footnotes and confirm the Plans.

The Debtors countered that because the Treatment Stipulations were silent about the post-petition payments made to Condado, such payments must be applied to the principal amount

11

of Condado's claims to reduce the Stipulated Claim Amounts to be paid through the Plans. Otherwise, they argued, the post-petition payments would constitute a "gift" and Condado would receive more than its allowed pre-petition claims in violation of §§ 502 and 506(b).[3]

In response, Condado reiterated that the Debtors had "forfeited" any right to have their post-petition payments applied to the Stipulated Claims Amounts because they failed to raise the issue during their extensive settlement negotiations of the Stipulations, and res judicata barred them from raising it at plan confirmation. Additionally, Condado argued that under § 506, the court could not direct the reallocation of the post-petition payments to the Stipulated Claims Amounts without first determining that Condado was undersecured. See 11 U.S.C. § 506(b) (providing that only oversecured creditors are entitled to post-petition interest).[4] Condado contended that the court had made no findings about the value of its collateral. Thus, its status as an oversecured or undersecured creditor was a disputed issue that was settled through the Treatment Stipulations.

C.    Confirmation of the Plans

The bankruptcy court held a combined confirmation hearing on the Plans. At the hearing, the parties reiterated the arguments they presented in their written submissions to the court. The Debtors also pressed that Condado was an undersecured creditor as established

---

[3]  All references to specific statutory sections are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[4]  As a general rule, interest stops accruing when the bankruptcy petition is filed. See 11 U.S.C. § 502(b)(2). "However, Congress has created an exception to this rule in the case of 'oversecured' creditors." Prudential Ins. Co. of Am. v. SW Bos. Hotel Venture, LLC (In re SW Bos. Hotel Venture, LLC), 748 F.3d 393, 403 (1st Cir. 2014) (citing United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 372-73 (1988)) (other citation omitted). "[Section] 506(b) 'permits an oversecured creditor to receive post-petition interest and other charges, and generally prohibits an undersecured creditor from receiving these benefits." In re Lichtin/Wade, L.L.C., 486 B.R. 665, 675 (Bankr. E.D.N.C. 2013). "An oversecured creditor may allocate adequate protection payments to postpetition interest to the extent of its oversecurity[.]" In re Vest Assocs., 217 B.R. 696, 705 (Bankr. S.D.N.Y. 1998) (citations omitted).

by the pre-petition appraisals attached to their respective disclosure statements. Under § 506(b), the Debtors argued, Condado was not entitled to accrue post-petition interest.

After hearing the parties' arguments, the bankruptcy court issued a bench ruling agreeing with Condado's position. Focusing on the express terms of the Treatment Stipulations, the court emphasized that the Debtors had agreed "to fully pay" the Stipulated Claim Amounts through "direct payments to Condado . . . beginning within 10 days of the approval of the stipulation[s] by the Court . . . ." The court then reasoned:

> The Court approved these respective stipulations in both cases. And according to the language of these stipulations in both cases, the amount was reduced by payments made after the Court's approval of the agreement.
>
> So . . . for the case of [Preserba], those payments would be [applied starting] December 1st, 2020, and monies paid prior to December 1st, 2020 are not applied to the settlement amount. And for the [Caribe Delta] case . . . , the Court approved the stipulation on November 30th, 2020 . . . . And according to the language of that stipulation, the [$4 million] amount is reduced by the payments made after the Court's approval of the agreement, November 30, 2020. So monies paid prior to November 30, 2020 are not applied to the settlement amount of [$4] million.
>
> . . . [T]he treatment stipulations in both cases call for prospective payments of the allowed amount of Condado's claims—not retroactive[—]as stipulated in the amount stipulations[,] through monthly payments over a period of seven years, with a balloon payment for the balance of the claims due at the end of the seven-year period.
>
> So the Court agrees that . . . footnote[] number 3 in Preserba and footnote number 5 in Inversiones Caribe [Delta] should be removed or will not apply to the situation. The Court points out that the cash collateral stipulations, those payments [have] already been applied. They were applied to interest, in accordance [with] the terms of the original loan documents, which called [for applying] payments to interest, both parties agreed to that, and that [was before] the stipulations [that are] before the Court. So we're moving prospectively and not retroactively. That's the ruling of the Court.

The court followed its ruling with the entry of orders confirming the Preserba plan "with the elimination of footnote 3" and the Caribe Delta plan "with the elimination of footnote 5."

## V.    The Appeal

The Debtors filed timely appeals of their respective confirmation orders.  They also filed motions seeking a stay pending appeal.  The bankruptcy court denied the motions concluding that the Debtors had not shown a strong likelihood of success on the merits of their appeals.  In Preserba's case, the court stated:

> The Debtor is appealing this court's exclusion of footnote 3 from the confirmed plan, which sought to apply post-petition payments in a manner that did not honor a stipulation with Condado.  The agreement to treat Claim No. 2 at Docket No. 161 stated that:
>
>> "[t]he Debtor agrees to fully pay Condado's secured claim in the amount of $3,600,000 through direct payments to Condado as follows: (a) monthly payments over a period of seven (7) years, that is, eighty-four (84) months, beginning within ten (10) days of the approval of this Stipulation by the Court and continuing on the first (1st) day of each month thereafter . . ."
>
>> Docket No. 161 at page 4.
>
> Such language precludes a finder of fact from understanding anything different than what was stipulated by the parties.  Had the parties intended to apply the post-petition payments to the stipulated amounts, they should have explicitly included it in the agreement.  Instead, the parties incorporated into the plan their agreement, approved by the court, that binds the parties to proceed in a certain manner.  The settled amount under this agreement was to be reduced by the payments that were to be made after court approval.

A substantively identical order denying a stay was entered in Caribe Delta's case.  The Debtors' subsequent motions to the Panel for a stay pending appeal were also denied.

## POSITIONS OF THE PARTIES

### I.    The Debtors

The Debtors present three arguments on appeal.  First, again asserting that Condado was undersecured, they argue that the bankruptcy court erred in ruling that their post-petition payments were properly applied to post-petition interest rather than to reduce the Stipulated Claim Amounts to be paid through the Plans.  This ruling, the Debtors maintain, violated § 502, which provides that no secured creditor can receive more than its allowed secured claim,

14

and § 506(b), which provides that only oversecured creditors are entitled to accrue post-petition interest.

Second, citing principles of contract interpretation under the Puerto Rico Civil Code, the Debtors argue that the bankruptcy court erred by failing to consider the provisions of the Stipulations "as a whole," overlooking the "unequivocal[]" language that Condado cannot claim or receive more than the Stipulated Claim Amounts. They emphasize the default provisions of the Treatment Stipulations, which define a unilateral amendment of Condado's proofs of claim to increase the Stipulated Claim Amounts as an event of default. By not reducing the Stipulated Claim Amounts by the post-petition payments, the Debtors contend, Condado is receiving more than the agreed claim amounts.

Third, the Debtors challenge the application of the doctrine of res judicata here because the Stipulations are silent on the allocation of post-petition payments and the issue was not litigated prior to the confirmation hearing. Res judicata, the Debtors insist, "cannot be applied to a fact not considered in the Stipulations."

## II. Condado

It comes as no surprise that Condado takes the opposite position. It asserts that the bankruptcy court correctly concluded that the Treatment Stipulations mandated full payment of the Stipulated Claim Amounts through prospective monthly payments commencing in December 2020. The Debtors' proposed application of post-petition, pre-confirmation payments to reduce the Stipulated Claim Amounts to be paid through the Plans directly contravened the Stipulations, Condado contends. It reiterates that the Debtors forfeited any right to reallocation of the post-petition payments by failing to raise the issue when settling all the disputed issues regarding Condado's claims. Finally, Condado contends that the doctrine of res judicata barred the

15

Debtors from challenging Condado's entitlement to post-petition interest and attempting to reallocate the Debtors' post-petition payments to principal through their respective plans.

## APPELLATE JURISDICTION

We have jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158(a)-(c); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 575 U.S. 496, 501-02 (2015). Generally, orders confirming chapter 11 plans, such as the confirmation orders before us, are final appealable orders. PRLP 2011 Holdings LLC v. Manuel Mediavilla, Inc. (In re Manuel Mediavilla, Inc.), 568 B.R. 551, 566 (B.A.P. 1st Cir. 2017). Accordingly, we have jurisdiction over these appeals.[5]

## STANDARD OF REVIEW

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. Jeffrey P. White & Assocs., P.C. v. Fessenden (In re Wheaton), 547 B.R. 490, 496 (B.A.P. 1st Cir. 2016). Typically, "[t]he bankruptcy court's decision to confirm a Chapter 11 plan is reviewed for abuse of discretion." Todeschi v. Juarez (In re Juarez), 836 F. App'x 557, 559 (9th Cir. 2020) (citation omitted). In these appeals the Debtors only challenge the bankruptcy court's elimination of footnotes 3 and 5 from their respective confirmed Plans based on the court's interpretation of the Stipulations. "Questions regarding the bankruptcy court's interpretation of a settlement agreement are legal issues reviewed de novo." In re Manuel

---

[5] Appeals of orders confirming chapter 11 plans can raise questions of equitable mootness. See, e.g., United Sur. & Indem. Co. v. López-Muñoz (In re López-Muñoz), 983 F.3d 69, 72-73 (1st Cir. 2020). But mootness is not implicated here. Equitable mootness "concerns whether changes to the status quo following the order being appealed make it impractical or inequitable to 'unscramble the eggs.'" La Trinidad Elderly LP SE v. Loíza Ponce Holdings LLC (In re La Trinidad Elderly LP SE), 627 B.R. 779, 794 (B.A.P. 1st Cir. 2021) (quoting Castaic Partners II, LLC v. Daca-Castaic, LLC (In re Castaic Partners II, LLC), 823 F.3d 966, 968 (9th Cir. 2016)). Here, it would not be impossible or inequitable to "unscramble the eggs" if the Debtors were to prevail on appeal. These appeals raise an insular issue between Condado and the Debtors about the total amount of payments to be made to Condado through the Plans. There are no complicated transactions to unwind, and no other creditors are affected by the dispute before us.

Mediavilla, Inc., 568 B.R. at 566 (citation omitted); see also Banco Popular de P.R. v. Babilonia Santiago (In re Babilonia Santiago), BAP No. PR 19-048, 2020 WL 7706918, at \*11 (B.A.P. 1st Cir. Dec. 23, 2020) ("[I]f a contract is deemed unambiguous, interpreting the written provisions of that contract is a question of law and thus subject to a *de novo* review standard.") (quoting Institut Pasteur v. Cambridge Biotech Corp. (In re Cambridge Biotech Corp.), 212 B.R. 10, 16-17 (D. Mass. 1997)).

## DISCUSSION

The Debtors' primary argument on appeal is that the bankruptcy court erred when it ruled Condado could apply post-petition payments to post-petition interest, rather than to reduce the respective Stipulated Claim Amounts because Condado was an undersecured creditor and was not entitled to accrue post-petition interest. We need not resolve whether or not Condado's claims are undersecured. The Plans incorporated the terms of the Stipulations and specified the amount of Condado's allowed secured claim as to each of the Debtors based on the Amount Stipulations. Further, they expressly stated that such agreed amounts would be paid pursuant to the terms of the Treatment Stipulations. Our only focus then is on the proper interpretation of the Stipulations.

## I.    Principles of Contract Interpretation

Our analysis of the Stipulations is governed by principles of contract interpretation. See Lestage v. Coloplast Corp., 982 F.3d 37, 48 n.5 (1st Cir. 2020) ("Stipulations are interpreted according to general contract law principles.") (citation omitted). The "construction of private contracts" is "a matter committed to state law[.]" HSBC Bank USA v. Branch (In re Bank of New Eng. Corp.), 364 F.3d 355, 363 (1st Cir. 2004) (citing Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 474 (1989)). The Treatment Stipulations provided that

17

they were to be "interpreted and enforced under the laws of the Commonwealth of Puerto Rico." We also note that the parties and the collateral securing Condado's claims are all located in Puerto Rico. Without doubt, Puerto Rico law applies here. See In re Babilonia Santiago, 2020 WL 7706918, at \*11 (recognizing that "Puerto Rico law [is] the functional equivalent of state law").

## A. Contracts of Compromise

In Puerto Rico, contracts are governed by the Puerto Rico Civil Code. Fraterfood Serv., Inc. v. DDR Del Sol LLC, S.E., No. 15-02009 (ADC), 2016 WL 1604702, at \*5 (D.P.R. Mar. 31, 2016). "Under Puerto Rico law, a contract comes into existence when: (1) the contracting parties consent; (2) there is a definite object which may be the subject of the contract; and (3) there is cause for the obligation." Maldonado-Solano v. MMM Health Care, No. 08-2246 (JAG), 2010 WL 11679334, at \*1 (D.P.R. Feb. 2, 2010) (citing P.R. Laws Ann. tit. 31, § 3391). "[T]he Puerto Rico Civil Code defines [a] settlement contract as a special contract of compromise . . . 'by which each of the parties in interest, by giving, promising, or retaining something, avoids the provocation of a suit, or terminates one that has already been instituted.'" Id. (quoting P.R. Laws Ann. tit. 31, § 4821). "[J]udicial stipulation[s] between litigants to terminate court action," such as the Stipulations in this case, constitute "contract[s] of compromise." In re Cantero Frau, No. 09-11136 ESL, 2014 WL 1464842, at \*8 (Bankr. D.P.R. Apr. 15, 2014) (citation omitted). They are "binding and enforceable, and ha[ve] the same authority of *res judicata*; the parties must consider the points discussed to be definitely resolved and cannot go over them again." Id. (quoting Empresas Inabón, Inc. v. Hatton Gotay (In re Empresas Inabón, Inc.), 358 B.R. 487, 524 (Bankr. D.P.R. 2006)); see also P.R. Laws Ann.

tit. 31, § 4827 ("A compromise has, with regard to the parties, the same authority as res []judicata[.]").[6] The parties to the stipulation are "also bound to the principle of *pacta sunt servanda* arising from Article 1044 of the Civil Code of Puerto Rico, . . . which holds parties to strict compliance with the terms of their bargain." In re Cantero Frau, 2014 WL 1464842, at *8; see also P.R. Laws Ann. tit. 31, § 2994 ("Obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations.").

Here, the Stipulations constitute contracts of compromise and have res judicata effect as to the amount and treatment of Condado's secured claims. See Caraballo Cordero v. Banco Financiero de P.R., 208 F. Supp. 2d 185, 189 (D.P.R. 2002) ("Once the existence of a compromise has been established, such a contract becomes *res judicata*."). We must determine then how to interpret the Stipulations.

### B. Applicable Rules of Contract Interpretation

Contracts of compromise are to be "interpreted restrictively" and "in accordance with the general rules of contract interpretation[.]" In re Cantero Frau, 2014 WL 1464842, at *8 (citations omitted). Puerto Rico's general rules of contract interpretation are set forth in the Puerto Rico Civil Code. P.R. Tel. Co. v. SprintCom, Inc., 662 F.3d 74, 90 (1st Cir. 2011) (citing P.R. Laws Ann. tit. 31, §§ 3471-3479). Under the Puerto Rico Civil Code, "[i]f the terms of a

---

[6] Puerto Rico law codifies the doctrine of res judicata in P.R. Laws Ann. tit. 31, § 3343, "which provides that a prior judgment will have preclusive effect when there is 'the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such.'" Cruz Berríos v. González-Rosario, 630 F.3d 7, 11-12 (1st Cir. 2010) (quoting P.R. Laws Ann. tit. 31, § 3343). "This provision encompasses both of the two traditional aspects of res judicata: claim preclusion and issue preclusion." Id. at 12 (citation omitted). "Puerto Rico courts do not interpret the phrase 'perfect identity' literally." Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 61 (1st Cir. 2000) (citations omitted). "A prior and current action will share a perfect identity of thing if they involve the same object or matter and will share a perfect identity of cause if they flow from the same principal ground or origin, or, put another way, if they derive from a common nucleus of operative facts[.]" García Monagas v. García-Ramirez de Arellano, 674 F.3d 45, 51 (1st Cir. 2012) (citations and internal quotation marks omitted). Perfect identity of parties exists when "parties in the current action were also parties in the prior action . . . ." Id. (citation omitted).

contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." P.R. Laws Ann. tit. 31, § 3471.

Applying Puerto Rico law, "when a court is faced with a contractual dispute it must first determine if the terms of the contract are clear." Autoridad de Carreteras y Transportacion v. TransCore Atl., Inc., 387 F. Supp. 3d 163, 166 (D.P.R. 2017) (citing P.R. Laws Ann. tit. 31, § 3471); see also In re Babilonia Santiago, 2020 WL 7706918, at *12. "'[C]lear' terms are those that 'in themselves are lucid enough to be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation.'" Wells Real Estate Inv. Tr. II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 53 (1st Cir. 2010) (quoting Home Ins. Co. v. Pan Am. Grain Mfg. Co., 397 F.3d 12, 16 (1st Cir. 2005)). The provisions of the contract also "should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together." P.R. Laws Ann. tit. 31, § 3475; see also Wells Real Estate Inv. Tr. II, Inc., 615 F.3d at 54. Only if the contract is ambiguous should the court consider extrinsic evidence to determine the intentions of the parties. See Autoridad de Carreteras, 387 F. Supp. 3d at 169.

## II.     Application of Puerto Rico Contract Interpretation Principles

### A.     The Terms of the Stipulations are Unambiguous

The terms of the Stipulations are straightforward and unambiguous. In the Amount Stipulations, the parties "settle[d] the contested matter between them" as to the specific amounts of Condado's claims and agreed that Condado would amend its proofs of claim to reflect those agreed amounts—$3.6 million in Preserba's case and $4 million in Caribe Delta's case. The Treatment Stipulations, in turn, "settle[d] the contested matter between them regarding the treatment of Condado's claim in the Plan[s] . . . ." Viewed as a whole, the Stipulations were obviously intended by the parties to completely resolve any and all issues relating to the amount

20

and treatment of Condado's claims to be paid through the Plans. The Treatment Stipulations also required that they "be adopted by Debtor[s'] Plan[s] and constitute[d] the treatment for secured creditor Condado." Moreover, they explicitly provided that if there were any discrepancies between the Stipulations and the Plans, the terms of the Stipulations would prevail. Consistent with the Stipulations, the Plans also provided that Condado would hold allowed secured claims of $3.6 million and $4 million, respectively, that would be paid pursuant to the terms of the Treatment Stipulations.

The Treatment Stipulations, in turn, provided that the Debtors would "fully pay" Condado's claims in monthly installment payments "*beginning within (10) days of the approval of th[e] Stipulation[s]* by the Court and continuing on the first (1st) day of each month thereafter" with "a balloon payment of the balance of the Claim[s] due at the end" of the applicable referenced time period. (emphasis added). Interpretation of this provision turns on the meaning of the phrase "fully pay." The word "fully" is defined as: "in a full manner or degree: COMPLETELY." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/fully (last visited Jan, 3, 2022); see also Cambridge Dictionary, https://www.dictionary.cambridge.org/us/dictionary/english/fully (last visited Jan, 3, 2022) (defining "fully" as meaning "completely"). Clearly, the Debtors were to *completely* pay Condado $3.6 million in Preserba's case and $4 million in Caribe Delta's case in the manner provided in monthly installments "beginning" after court approval of the Treatment Stipulations. The word "beginning" is defined as "the point at which something begins: START." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/beginning (last visited Jan. 3, 2022). These payment terms are susceptible of only one meaning: the Debtors were to *completely* pay Condado's secured claims in the stipulated amounts of $3.6 million and $4 million, respectively, through prospective, not retroactive, monthly payments commencing ten

21

days *after* court approval of the Treatment Stipulations. The terms of the Stipulations are clear, and the bankruptcy court correctly construed them.[7]

The Debtors do not argue that the Stipulations are ambiguous. Rather, they contend that the bankruptcy court failed to consider the Stipulations "as a whole," ignoring provisions that, they claim, "provided unequivocally that Condado w[ould] not claim or receive more than $3.6 [million or $4 million, respectively]." In support, they point to language in the Stipulations which define a unilateral amendment of Condado's proofs of claim to increase the Stipulated Claim Amounts as an event of default. This argument is unpersuasive. Condado complied with the Stipulations and did not amend its proofs of claim to increase the Stipulated Claim Amounts. And the bankruptcy court's conclusion that the Stipulated Claim Amounts were to be paid through prospective payments aligns with the literal language of the Stipulations.

The Debtors make much of the absence in the Treatment Stipulations of any reference to the allocation of their post-petition, pre-confirmation payments to Condado. While in some circumstances silence in a contract can lead to ambiguity, see Adria Int'l Grp., Inc. v. Ferré Dev., Inc., 241 F.3d 103, 110 (1st Cir. 2001), such ambiguity is not present here. Indeed, it would trample Puerto Rico's contract principles to interpret the Stipulations in the manner espoused by the Debtors to permit them, in hindsight, to ignore the plain language of the Stipulations and further reduce the already compromised amounts of Condado's claims under the confirmed Plans. The Treatment Stipulations required payment in full of the Stipulated Claim Amounts through prospective payments commencing after court approval of the Stipulations.

---

[7] Although the bankruptcy court did not discuss contract interpretation principles or expressly state that it found the Stipulations unambiguous, it is evident from the court's explanation at the confirmation hearing, as well as its orders denying the Debtors' motions for stay pending appeal, that it applied the literal terms of the Stipulations when issuing its rulings. See supra at 13-14.

In confirming the Plans without inclusion of footnotes 3 and 5, the bankruptcy court correctly enforced the settlement terms to which the parties agreed to be bound.

### B. Allocation of Post-Petition Payments

We also conclude that the bankruptcy court did not commit legal error by not requiring Condado to reallocate the Debtors' post-petition payments to reduce the Stipulated Claim Amounts. The Debtors raised this argument for the first time in response to Condado's objection to plan confirmation, months after the parties' negotiations settling disputed cash collateral issues and the entry of the court-approved Stipulations resolving *all* disputed issues about Condado's claims and their payment under the Plans. Bluntly stated, the Debtors forfeited any right they may have had to challenge Condado's application of their post-petition payments in an effort to reduce the stipulated amounts of Condado's claims. See Kontrick v. Ryan, 540 U.S. 443, 458 n.13 (2004) (stating that "forfeiture is the failure to make the timely assertion of a right") (citation and internal quotation marks omitted); United States v. Cezaire, 939 F.3d 336, 339 n.2 (1st Cir. 2019) ("Forfeiture is the failure to make the timely assertion of a right, an example of which is an inadvertent failure to raise an argument.") (citation and internal quotation marks omitted).

Moreover, the Debtors fail to acknowledge that they are bound by the unambiguous terms of the Stipulations, which, as discussed earlier, have res judicata effect on all issues that were *or could have been litigated.* See Ruiz-Sánchez v. Goodyear Tire & Rubber Co., 717 F.3d 249, 253 n.1 (1st Cir. 2013) ("Although it may seem unconventional to use the res judicata label in th[e] context [of a contract of compromise] due to the absence of an earlier judgment, Puerto Rico law nonetheless gives res judicata effect to . . . compromises.") (citing P.R. Laws Ann. tit. 31, § 4827). "Under Puerto Rico's res judicata scheme, claim preclusion 'binds parties

from litigating or relitigating any claim that was *or could have been litigated* in a prior adjudication . . . .'" Cruz Berríos, 630 F.3d at 12 (emphasis added) (citation omitted); see also In re Cantero Frau, 2014 WL 1464842, at *6 ("The doctrine of *res judicata* . . . forecloses litigation of all matters which have been litigated or might have been litigated in an earlier case.") (citation omitted).

At the time the parties were negotiating the amount and treatment of Condado's claims, Condado had already added post-petition interest to its claims and applied the post-petition, pre-confirmation payments received from the Debtors to post-petition interest. This allocation of post-petition payments was reflected in the Reconciliation Report the Debtors submitted with the Joint Pretrial Report in June 2020. Just a few months later, when settling their disputes with Condado, the Debtors did not: challenge Condado's allocation of such payments to post-petition interest; advance any argument that Condado was undersecured with no right to post-petition interest; assert that such payments should be reallocated to reduce the Stipulated Claim Amounts; or seek a valuation hearing to determine whether Condado was oversecured or undersecured. The issue of the application of the Debtors' post-petition payments is directly related to the treatment of Condado's claims under the Plans, and the Debtors could have, and should have, addressed it in the Stipulations. Having failed to do so, the Debtors were precluded from seeking to reallocate the post-petition payments at confirmation through the inclusion of the disputed footnotes.

We conclude, therefore, that the bankruptcy court did not err in determining that footnotes 3 and 5 of the Debtor's respective Plans conflicted with the unambiguous terms of the Stipulations and striking them from the confirmed Plans.[8]

---

[8] One final note bears mentioning. After the bankruptcy court concluded that the Plans could not be confirmed with their proposed reduction of Condado's claims as provided in footnotes 3 and 5 of their respective Plans, the Debtors reserved their appeal rights, but nonetheless, requested that the Plans be

**CONCLUSION**

For the reasons discussed above, we **AFFIRM**.

---

confirmed rather than denied altogether. On appeal, the Debtors do not challenge the bankruptcy court's confirmation of the Plans; they challenge only its modification of the Plans. Therefore, any challenge to confirmation is waived, and we need not address the same. See United States v. Bayard, 642 F.3d 59, 63 (1st Cir. 2011) (stating appellant's failure to brief an issue waives it).